UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LIMA LS PLC, : | |
|     Plaintiff, : | |
| : | |
| v. : | 3:12-cv-1122 (WWE) |
| : | |
| PHL VARIABLE INSURANCE COMPANY, : | |
| PHOENIX LIFE INSURANCE COMPANY, : | |
| THE PHOENIX COMPANIES, INC., : | |
| JAMES D. WEHR, PHILIP K. : | |
| POLKINGHORN, DONA D. YOUNG, : | |
|     Defendants. : | |

### MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS

In this action, plaintiff Lima LS PLC has brought its complaint concerning life insurance policies bought on the secondary market against defendants PHL Variable Insurance Company ("PHL"), Phoenix Life Insurance Company ("PLIC"), The Phoenix Companies, Inc. ("PNX") (collectively, the "Phoenix Defendants"); and James Wehr, Philip Polkinghorn, and Dona Young (collectively, the "Individual Defendants"). Plaintiff alleges the following counts: (1) monopsony[1]/monopoly in violation of Connecticut General Statutes § 35-27 against the Phoenix Defendants; (2) attempted monopsony/monopoly in violation of Connecticut General Statutes § 35-27 against the Phoenix Defendants; (3) violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act against the Phoenix

---

[1] "Monopsony power is market power on the buy side of the market. . . . As such, a monopsony is to the buy side of the market what a monopoly is to the sell side and is sometimes colloquially called a 'buyer's monopoly.'" Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc., 549 U.S. 312, 321 (2007). The equation for measuring market power in monopsony is a "mirror image" of the relationships creating market power in a seller. Todd v. Exxon Corp., 275 F.3d 191, 202 (2d Cir. 2001).

1

Defendants; (4) common law fraud against the Phoenix Defendants and the Individual Defendants; and (5) violation of the Racketeering Influenced and Corrupt Organizations Act against the Individual Defendants.

In a prior ruling, this Court denied in part and granted in part a motion to dismiss. Plaintiff amended its complaint, and defendants moved to dismiss that complaint for lack of standing and failure to state plausible claims for relief. For the following reasons, the motion to dismiss will be denied.

## I.  BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all allegations of the complaint as true.

Plaintiff is a company incorporated in England and Wales with limited liability. Its principal place of business is London.

The Phoenix Companies ("PNX") is the parent company of PHL Variable Insurance Company ("PHL") and Phoenix Life Insurance Company ("PLIC"). PNX's officers and directors overlap with the officers and directors of defendants PHL and PLIC. PLIC issued the life insurance policies owned by plaintiff.

James Wehr is the President and Chief Executive Officer of PNX. Philip Polkinghorn is the Executive Vice President of Business Development of PNX and President of PNX's Life and Annuity Business Segment. Dona Young was the President of PNX from 2000 to April 15, 2009; the Chief Executive Officer and Chairman of the Board of PNX from 2003 to April 15, 2009; and a consultant to PNX until at least April 15, 2010.

The Phoenix Defendants have targeted the market of high net worth individuals, who may want to invest in life insurance with the knowledge that they might sell their policies in the future on the secondary market.  The Phoenix Defendants have relied upon the existence of the secondary market for life insurance to drive the primary market for life insurance policies with high death benefits.

Plaintiff is a participant and investor in the secondary market for Phoenix life insurance policies.  Plaintiff holds the interest in 197 Phoenix policies (the "Policies") currently in force that were issued between 2003 and 2009.  The Phoenix Defendants have collected premiums paid by plaintiff on these policies, although plaintiff has lapsed or surrendered 52 policies.  Plaintiff acquired the interest in the Policies in December 2010 through its acquisition of five limited liability companies that held interests in the Policies.  Plaintiff has resold or attempted to resell the Policies to other investors in the secondary market.

After the stock market crashed in 2008, the Phoenix Defendants sustained massive financial losses and faced difficulty in meeting contractual obligations on billions of dollars in life insurance policies.  In response to a weak financial position, the Individual Defendants and other corporate officers orchestrated a plan designed to eliminate the liabilities associated with the life insurance policies.  Defendants launched an aggressive campaign to attack and undermine previously-issued policies by refusing to honor or record transfers of ownership.  Through such strategy, a policy issued by defendants would become undesirable even to the policyholders, who would not know whether the policy would ultimately be honored; and such uncertainty would induce policyholders to lapse or surrender their policies back to the Phoenix Defendants.  The

Phoenix Defendants would then be able to keep all or most of the premiums without paying the future benefits associated with the policies.

The Phoenix Defendants' conduct has resulted in a diminished secondary market for their life insurance policies. Any buyers are only willing to purchase policies at severely reduced prices because they do not know whether the terms of the policies will be honored. Plaintiff has suffered and will continue to suffer financial injury because it has been deprived of revenue and profits that it would have made on the policies had the value of such policies not been diminished by defendants' anticompetitive conduct.

## II. DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

With regard to allegations of fraud or fraudulent conduct, a plaintiff must comply with the higher pleading standard required by Federal Rule of Civil Procedure 9. In

order to satisfy Rule 9(b), a complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements or omissions were made; and (4) explain why the statements or omissions were fraudulent.  Antian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999).  A plaintiff may make general allegations of malice, intent, knowledge or other state of mind, but the facts must give rise to a strong inference of fraudulent intent.  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  The purpose of the specificity requirement is:  (1) to ensure that a complaint provides a defendant with fair notice of plaintiff's claim; (2) to safeguard a defendant's reputation from improvident charges; and (3) to protect defendant from a strike suit.  O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991).

**A.    Standing**

Defendants argue that plaintiff lacks standing to assert any of its claims because the Policies are owned by U.S. Bank rather than Lima.[2]  Defendants contend that Lima will not sustain any damages because it is not the party owed death benefits.  Defendants maintain that they did not make this argument in their prior motion to dismiss because they have only recently discovered this information.  The Court finds defendants' position unpersuasive.

The initial complaint in this matter alleged that the Policies are held by U.S. Bank "as securities intermediary;" and that Lima acquired the interests in the Policies, has

---

[2]Plaintiff Lima is the general partner of a Delaware limited partnership, Lima LP.  Under Delaware law, "general partners have the power to sue directly on behalf of the partnership on the partnership's claims." HB General Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1194 (3d Cir. 1996).

paid and continues to pay the premiums on the Policies, and has lapsed or surrendered certain Policies receiving nothing in return. Plaintiff points out that defendant PHL argued in a similar Delaware district court action that U.S. Bank was suing in its capacity as securities intermediary for Lima LP and thereby representing the interests of Lima LP.

Plaintiff alleges that it is a participant and investor in the secondary market for the Phoenix Defendants' life insurance policies and that it has been injured by anticompetitive, exclusionary conduct to drive potential buyers out of the secondary market. Thus, plaintiff meets the standard for "antitrust standing" because it alleges a plausible "injury of the type the antitrust laws were intended to prevent" that stems from defendant's allegedly unlawful acts. In re DDAVP Direct Purchaser Antitrust Litigation, 585 F.3d 677, 688 (2d Cir. 2009).

As to plaintiff's RICO claims, this Court has already rejected the Phoenix Defendants' argument that plaintiff lacks standing because its injuries are not ripe or recoverable. The Court adheres to its prior decision. "RICO standing extends to all directly injured parties, not just the most directly injured among them." Plaintiff has alleged an interest in the Policies and that defendant's allegedly fraudulent conduct has proximately caused plaintiff to lose money due to Policies that lapsed or had to be surrendered. Similarly, plaintiff has standing to assert the CUTPA and fraud claims based on its economic interest in the Policies.

**B.   RICO and Fraud Claims**

In its ruling on the prior motion to dismiss, this Court dismissed without prejudice plaintiff's claims of RICO and fraud against the Individual Defendants for failure to plead

with particularity.  Defendants maintain that the amended complaint fails to allege the RICO and fraud claims against the Individual Defendants with sufficient particularity.

    1.    <u>RICO</u>

Plaintiff alleges that the Individual Defendants are liable under the civil RICO statute, 18 U.S.C. § 1962(c) which provides that it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ."  A RICO claim based on mail and wire fraud must satisfy Federal Rule of Civil Procedure 9(b) by pleading with particularity the circumstances constituting fraud.  <u>See</u> <u>Lundy v. Catholic Health Sys. of Long Island Inc.</u>, 711 F.3d 106, 119 (2d Cir. 2013).  Facts must be alleged as to each individual defendant.  <u>DeFalco v. Bernas</u>, 244 F.3d 286, 306 (2d Cir. 2001).

A plaintiff must establish that a RICO person engaged in (1) conduct (2) of a RICO enterprise (3) through a pattern of (4) racketeering activity that proximately caused injury to plaintiff's business or property.  <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 496 (1985).

Plaintiff asserts that its amended complaint sets forth the "who, what, and where" of the fraudulent scheme.  The amended complaint adds, <u>inter</u> <u>alia</u>, the following allegations relevant to the Individual Defendants.

Defendants Wehr, Polkinghorn and Young attended numerous internal meetings and sessions to discuss and approve the alleged fraudulent scheme; directed Phoenix Defendants' product development teams to design their products to attract investors in

7

the secondary market; directed the creation of a list of approved premium financing programs to be used to finance the purchase of life insurance policies issued by the Phoenix Defendants; and aggressively pursued premium-financed business with defendant Young traveling to encourage such business.

Defendants Young and Polkingham directed defendants' sales force to sell policies using non-recourse premium financing and caused defendants to relax or disregard normal underwriting standards in order to facilitate the sales of policies with the highest possible death benefits.  This strategy to target sales of policies that were likely to be premium-financed and to relax or abandon underwriting standards caused defendants to gain revenue, share price and production.

In 2008, the Phoenix Defendants incurred nearly a billion and a half dollars of losses on its investment portfolio.  On October 31, 2008, defendant Young was faced with concern about defendants' financial condition.  At that time, she sent policyholders, shareholders and all interested parties a message in which she indicated that defendant had a "strong balance sheet with adequate capital and liquidity to meet [its] obligations."

In late 2008 or early 2009, the Individual Defendants directed defendants not to honor the policies that were known to be investor-owned.  Upon their instruction, the Title Department created a document known as the "LPT Spreadsheet" that identified investor-owned policies to be challenged as "Stranger-originated Life Insurance" ("STOLI") policies if such policies did not lapse or become surrendered.

The Individual Defendants induced policyholders to continue making premium payments at the same time that they intended to have the Phoenix Defendants raise

insurance rates, rescind or void policies, and ultimately, refuse to pay death benefits. The Individual Defendants directed that misleading materials be sent by U.S. mail or transmitted by wire.  Such materials included premium notices, annual policy statements, verifications of coverage, policy illustrations and insurance rate increase letters.

In November 2011, defendant Wehr indicated, during an investor call for the third quarter of 2011, that life insurance liabilities were managed through a combination of insurance rate changes and legal remedies.

Defendant Wehr caused PNX to issue false and misleading financial statements for 2009, 2010, 2011 and the first two quarters of 2012 in order to conceal the company's true financial condition and induce policyholders into continuing to make their premium payments.

In September 2012, Defendant PHL reported to the SEC that it had understated its net loss and overstated stockholder's equity in 2011, 2010, 2009, and 2008.  At the same time, PNX, PHL's parent, disclosed that its Form 10-Ks and Form 10-Qs for 2011, 2010 and 2009 "should no longer be relied upon" because of the material error identified by PHL.

    a.    <u>Conduct</u>

The complaint meets the requirement of alleging participation pursuant to Section 1962(c) as set forth by the "operation and management test" of <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 185 (1993), which provides that in order to conduct or participate in the affairs of an enterprise, "one must participate in the operation or management of the enterprise itself."  A plaintiff must allege facts sufficient to establish

that a RICO defendant had "part in directing the enterprise's affairs." Id. at 179. The conduct element is not subject to Rule 9(b)'s particularity requirement. Am. Buying Ins. Servs., Inc. v. Kornreich & Sons, Inc., 944 F. Supp. 240, 247 (S.D.N.Y. 1996).

The complaint alleges, inter alia, that the Individual Defendants, all senior executives, devised and caused defendants to carry out a fraudulent scheme to induce policyholders to continue paying premiums while not paying out claims on investor owned policies.  The amended complaint alleges several instances where the Individual Defendants made knowing false statements regarding the corporation's financial status and the intention not to honor claims on policies that it had previously marketed to investors.  The complaint also alleges that defendant Young maintained her ties to defendants by becoming a consultant for a period after she had resigned.  Accordingly, plaintiff's complaint adequately alleges the conduct element.

      b.      Committed or Aided and Abetted the Commission of Predicate Acts

Defendants assert that plaintiff has not alleged any Individual Defendant's commission of a predicate act.  Plaintiff alleges that defendants used the mail and wires to send correspondence that fraudulently concealed the intent to deny death claims on life insurance.  To state a violation of statutory mail or wire fraud, plaintiff must establish (1) the existence of a scheme to defraud; (2) defendants' knowing or intentional participation in the scheme; and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.  S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996).   To plead the existence of a scheme to defraud, plaintiff must allege (1) the existence of a scheme to defraud; (2) fraudulent intent; and (3) materiality of the representations.  Boritzer v. Calloway, 2013 WL 311013, *6 (S.D.N.Y.

2013).

The amended complaint alleges that the Individual Defendants devised a fraudulent scheme to eliminate the liabilities associated with the life insurance policies by refusing to honor the previously issued Policies; and directed issuance of the fraudulent and materially misleading premium notices, policy statements, verifications of coverage, policy illustrations and insurance rate increase letters that led policy owners to believe that their policies would be honored.  The amended complaint details the alleged fraudulent statements and the dates that they were sent.  However, the amended complaint does not allege which individual directed the fraudulent mailings.  Nevertheless, the Rule 9 particularity requirement may be relaxed in cases involving corporate insiders where it is difficult to attribute each act to a specific stage of the scheme and this information is within defendants' knowledge.  Rothberg v. Chloe Foods Corp., 2007 WL 2128376, at *15 (E.D.N.Y. 2007).  Accepting plaintiff's allegations as true, plaintiff has adequately alleged the nature and operation of the mail or wire fraud claim; plaintiff has also established that defendants had the requisite intent to deceive or defraud the policyholders through materially false communications sent to plaintiff.

    c.    <u>Pattern of Racketeering Activity</u>

Plaintiff must allege that the related predicate acts "amount to or pose a threat of continued criminal activity," which may be demonstrated by showing either "closed-ended" or "open-ended" continuity.  H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241 (1989).  Closed-ended continuity can be demonstrated by a series of related predicates occurring over a substantial period of time, and open-ended continuity requires a showing that there was a threat of criminal activity continuing beyond the

period in which the predicate acts were performed.  Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999).  Generally, the threat of continuity is presumed when the enterprise's business is primarily or inherently unlawful.  Spool v. World Child Intern. Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008).  If the enterprise is primarily legitimate, there is no such presumption, although open-ended continuity may be found where the predicate acts constitute the regular way of operating that business or where the nature of the predicate acts implies a threat of continued criminal activity.  Pieper v. Benerin, LLC, 2013 WL 4506164, *8 (E.D.N.Y. 2013).  However, open-ended continuity need not be alleged as a currently-existing threat, only that a threat of continuity is inherent in the alleged racketeering activity.  Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 370 (E.D.N.Y. 2012).  Thus, open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition."  H.J., 492 U.S. at 241.  Subsequent events, such as termination of certain conduct, is irrelevant to the continuity determination, which must be viewed at the time the racketeering activity occurred.  Allstate Ins. Co., 843 F. Supp. 2d at 370.

    In this instance, the amended complaint alleges that the predicate acts involved "the sending of routine correspondence" to induce policyholders to continue paying premiums, although defendants had no intention of honoring such policies.  Thus, despite defendants' assertion that no continuing threat could possibly exist because defendants Young and Polkinghorn were no longer employed by defendants, the allegations suggest that the predicate acts are of a continuing nature as defendants may challenge their obligations on policies as they become due despite representations to the contrary.  Accordingly, a threat of continuity has been properly pled.

d.  RICO Conspiracy

Defendants maintain that plaintiff's RICO conspiracy claim fails for lack of any facts demonstrating an objective manifestation of an agreement among the Individual Defendants.

Once a RICO enterprise has been established, a plaintiff alleging RICO conspiracy is required to show that the defendants knew the general nature of the conspiracy and that the conspiracy extended beyond their individual roles.  Crabhouse of Douglaston Inc. v. Newsday Inc., 801 F. Supp. 2d 64, 89 (E.D.N.Y. 2011).  In this instance, the Court has found that the complaint adequately alleges a RICO enterprise.  The amended complaint also provides allegations that the Individual Defendants agreed to participate in the enterprise; that they devised and approved of the fraudulent scheme to represent that policies were considered to be valid and in force; and that defendants planned not to honor such policies once they became due despite representations to the contrary.  The Court finds that plaintiff has adequately alleged a RICO conspiracy.

2.  Fraud

Defendants maintain that the fraud claim should be dismissed because (1) plaintiff's allegations fail to give rise to a strong inference of fraudulent intent; (2) defendants owe no duty to plaintiff; and (3) there is no liability on the part of the Individual Defendants.  The Court finds such arguments to be unavailing.

In the discussion relevant to the RICO claim, the Court found that the allegations sufficiently alleged fraudulent intent.  Accordingly, the Court finds that plaintiff's fraud claim withstands the motion to dismiss on this basis.  Further, the Court has already

held that plaintiff is a party in interest and that defendant owes a duty to disclose a known intention to contest or not to honor the Policies.  Finally, although an officer of a corporation does not incur personal liability for the corporation's torts based on that officer's position, an officer who participates in the commission of a tort may be liable to third persons injured thereby regardless of whether the officer has acted on behalf of the corporation.  Sturm v. Harb Development, LLC, 298 Conn. 124, 132-33 (2010); Joseph General Contracting, Inc. v. Couto, 144 Conn. App. 241, 256 (2013) (noting that the Connecticut Supreme Court has affirmed the imposition of individual tort liability on a corporate officer without piercing the corporate veil.). The Court will not dismiss the fraud claim on this motion.

### C. CUTPA

Plaintiff has alleged a CUTPA claim based upon violation of the Connecticut Unfair Insurance Practices Act ("CUIPA").[3]  Plaintiff alleges that defendants anticomptetitive, exclusionary, unfair and deceptive conduct violates CUIPA.  In particular, plaintiff asserts that defendants violated CUIPA through false or misleading illustrations, advertising materials, statements and omissions, and discrimination in premiums and rates charged.  In its prior ruling on defendants' motion to dismiss, the Court instructed plaintiff to amend the complaint to clarify the violations of CUIPA. Defendants now attack the CUTPA claims on the grounds that (1) such claims cannot

---

[3]The Connecticut Supreme Court has not yet decided whether a private right of action exists under CUIPA.  U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co., 2013 WL 791462, *10 n.10 (S.D.N.Y. 2013).  However, it is well settled that violations of CUIPA may be alleged as a basis of CUTPA.  Nazami v. Patrons Mut. Ins. Co., 280 Conn. 619, 625 (2006).

14

rest on an affirmative misrepresentation theory already rejected by this Court; (2) the affirmative misrepresentations are non-actionable puffery or opinions; (3) violations of the Connecticut Antitrust Act cannot support the CUTPA claims; (4) the unfair settlement claims are not yet ripe; (5) the three year statute of limitations bars plaintiffs' amended CUTPA claims; and (6) the CUTPA damages are derivative and non-recoverable because U.S. Bank is the owner and beneficiary of the Policies. Defendants also maintain that plaintiff has improperly filed suit that is duplicative of actions filed by U.S. Bank as Lima LP's securities intermediary against defendants pending in federal courts.

The Court has previously held that plaintiff could not premise an affirmative misrepresentation theory on defendants' assertions that the policies were in force, issued or had value, which representation may not have been false at the time. However, plaintiff's CUTPA claims may rest on allegations that defendants issued false policy illustrations that caused policy holders to make ill-informed decisions to lapse or surrender the policies; and that defendants fraudulently concealed their later alleged intention not to honor the Policies.

Although statements of economic projections, optimistic expressions or other puffery may be insufficient to assert a CUTPA violation, a qualitative statement that constitutes a material misrepresentation or conceals known facts may be actionable. U.S. Bank Nat. Ass'n, 2013 WL 791462 at *6 (finding defendants' statements concerning "flexibility" of premium payments were not puffery and citing cases). Taking plaintiff's allegations as true in this case, the Court finds that defendants' statements could constitute affirmative misrepresentations of fact.

15

Defendants argue that plaintiff's allegations of exclusionary or antitrust misconduct cannot form the basis of a CUTPA violation. Defendants rely upon the recent Connecticut Supreme Court ruling, State v. Acordia, Inc., which held that "the legislature intended to occupy the field of defining unfair insurance practices" when it enacted CUIPA, and therefore, a common law breach of fiduciary duty could not provide a foundation for a CUIPA violation. 310 Conn. 1, 26 (2013). The Court explained:

> Because CUIPA provides the exclusive and comprehensive source of public policy with respect to general insurance practices, we conclude that, unless an insurance related practice violates CUIPA or, arguably, some other statute regulating a specific type of insurance related conduct, it cannot be found to violate any public policy and, therefore, it cannot be found to violate CUTPA.

Id. at 37.

In this instance, plaintiff's allegations of exclusionary conduct could potentially fall within CUIPA's prohibition of "any act of boycott, coercion or intimidation resulting in or tending to result unreasonable restraint of, or monopoly in, the business of insurance," Conn. Gen. Stat. § 38a-816(4), or a violation of CUTPA based on a statute regulating a specific type of insurance related conduct. As previously stated, dismissal on a motion to dismiss is not appropriate if the claim can be construed as plausible. See Acadia Ins. Co. v. Connecticut Light & Power Co., 2013 WL 467817, *1 (D. Conn. 2013).

The Court is also unpersuaded that the allegations of unfair claim settlement practices should be dismissed based on assertions that such claims are unripe and that the alleged practices do not represent general business practices. Plaintiff has alleged that the improper handling pertains to its claims and those of other insureds; such

allegations may be construed as a general business practice rather than a sporadic or isolated instance.  Further, although the named insureds may not yet have died, a CUTPA plaintiff may state a claim based on allegations of an improper general business practice as to other insureds that has resulted in an ascertainable loss to plaintiff.  See Fradera v. State Farm Mut. Auto Ins. Co., 2013 WL 4419426 (Conn. Super. Ct. July 26,  2013).  The Court has already found that plaintiff has an interest in the Policies and has alleged an ascertainable loss to its interest in the Policies.  Accordingly, the Court will not dismiss the CUTPA claim based on U.S. Bank's record ownership of the Policies at this stage in the proceedings.[4]

The Court finds that CUTPA's three-year statute of limitations does not bar the amended allegations, which concern conduct on or after July 31, 2010,[5] and which also relate back to the original CUTPA claim filed in August 2012.  U.S. Bank, N.A. v. Suvernay, 2011 WL 4424419, *6 (Conn. Super. Ct.).

Finally, the CUTPA claim will not be dismissed as improper claims splitting.  Plaintiff counters that the CUTPA claims brought by U.S. Bank are related only to misrepresentations concerning improper insurance rate increases and concern only 33

---

[4]This case is distinguishable from Carford v. Empire Fire and Marine Ins. Co., 94 Conn. App. 41, 52 (2006), which held that the right to assert a private cause of action for CUIPA violations through CUTPA does not extend to third parties absent subrogation or judicial determination of the insured's liability.  In this instance, plaintiff is not a potential subrogee but has alleged that U.S. Bank serves as its securities intermediary and that defendants' conduct has injured its interest in the Policies.  See also Ensign Yachts, Inc. v. Arrigoni, 2010 WL 918107, *15 (D. Conn. 2010) (distinguishing Carford and allowing third party beneficiary to insurance contract to assert CUIPA/CUTPA claim).

[5]The amended complaint was filed on July 31, 2013.

of the 247 Policies.  Thus, it appears that plaintiffs' case is not duplicative of the other pending actions.

### III.  CONCLUSION

For the foregoing reasons, the motion to dismiss the amended complaint [doc. # 89] will be DENIED.

Dated at Bridgeport, Connecticut, this _16th__ day of December 2013.

_____/s/_____
Warren W. Eginton
Senior United States District Judge