```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT


                                 :
LIMA LS PLC                      :
                                 :
v.                               :  CIV. NO. 3:12CV1122(WWE)
                                 :
PHL VARIABLE INSURANCE           :
COMPANY, ET AL                   :
                                 :
                                 :
```

**RULING ON PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION NOS. 53-55**

Plaintiff seeks to compel production of documents responsive to its First Requests for Production Nos. 53-55, which concern Phoenix's efforts to rescind policies while retaining the premiums paid on those policies. Lima contends it does <u>not</u> seek to re-litigate defendants' rescission actions. Rather, it "seeks to obtain <u>facts</u> relating to defendants' rescission efforts because those facts are unquestionably relevant to the allegations at issue here." [Pl. 7/22/14 Let. at 7]. For example, "any effort on the part of defendants to seek rescission of their own policies, while nonetheless seeking to retain the premiums paid on those policies, implicates factual issues concerning Phoenix's initial underwriting practices, prior knowledge of alleged misrepresentations in policy applications and ongoing receipt of premium payments under false

1

pretenses." Id. Further, Lima argues that "Phoenix's rescission efforts also calls into question the truth, and accuracy of Phoenix's representations to regulators and others about Phoenix's underwriting practices and its purported efforts to eliminate STOLI business." Id. at 8.

The parties briefed the issue in letters dated July 22 and 29 and September 16, 2014.

Specifically, Lima's First Requests for Production Nos. 53-55, seek the following:

> **No. 53:** All documents concerning Phoenix's guidelines, policies, memoranda, training manuals, procedures or practices relating to efforts to seek rescission of life insurance policies issued by Phoenix.
>
> **No. 54:** All documents concerning any contemplated or actual decision by Phoenix to rescind issued policies, including without limitation all documents concerning: (a) the date on which any such policy was issued; (b) the date on which any rescinded policy was rescinded; (c) the reasons that Phoenix rescinded the policy; (d) the amount of premiums paid by the policy holder prior to Phoenix's rescinding the policy; and (e) how much of the premiums paid by the policyholder Phoenix retained after rescinding the policy.
>
> **No. 55:** All documents concerning any efforts by Phoenix to retain premiums with respect to any rescinded policies.

As a "starting point," Lima seeks an order compelling defendants to produce:

1. Phoenix's guidelines, policies, memoranda, and training manuals related to rescission efforts;

2

2. Documents sufficient to show which Phoenix policies were subject to rescission attempts; and

3. Documents concerning Phoenix's efforts to retain premiums previously paid as to rescinded policies.

Id. at 9. In its letter dated September 16, 2014, Lima stated that, "having failed to make any headway with defendants with its compromise proposal, Lima now seeks an order requiring a full production of all documents responsive to Request Nos. 53-55 as propounded." [Pl. Let. 9/16/14 at 4].

Defendants argue that Lima's request should be denied for three reasons: "(1) Lima's narrowed" requests are moot because all responsive, non-privileged documents are publically available; (2) Noerr-Pennington doctrine bars Lima from pursing claims based on Phoenix's litigation activity; and (3) Phoenix's litigation with other parties regarding policies not at issue in this case is irrelevant to Lima's claims." [Def. Let 7/29/14 at 1].

**Noerr-Pennington Doctrine**

The Noerr-Pennington doctrine is not a bar to discovery. See Associated Container Transp. Ltd v. U.S., 705 F.2d 53, 59-60 (2d Cir. 1983) (finding that the discovery requests are "'reasonably calculated to produce admissible evidence' regardless of possible Noerr-Pennington immunity that may shield some of appellees' activity."); P & B Marina, Ltd. v. Logrande,

3

136 F.R.D. 50, 61 (E.D.N.Y. 1991) ("Although the Noerr-Pennington doctrine may ultimately guide the court to find Seaview immune from liability under 42 U.S.C. §1983 for the claimed violations, the doctrine does not apply to discovery."); Fox News Network, L.L.C. v. Time Warner, Inc., 962 F. Supp. 339, 346 (E.D.N.Y. 1997) (quoting P & B Marina, Ltd, 136 F.R.D. at 61, n.9); U.S. Football League v. National Football League, No. 84 Civ. 7484 (PKL), 1986 WL 5623, at *7 (S.D.N.Y. May 15, 1986).

The Court has carefully considered defendants' cases in support of their position and find them not persuasive and/or distinguishable. Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P., 129 F. Supp. 2d 578, 594 (W.D.N.Y. 2000) (dismissing without discovery under Noerr-Pennington doctrine on a motion to dismiss where the Court considered the various documents from the underlying administrative proceedings, plaintiff had notice of these proceedings and based its action upon those proceedings), affirmed, 229 F.3d 1135, at *1 (2d Cir. 2000)l; (properly refusing further discovery "on the underlying economic circumstance of the underlying copyright litigation" where a finding of probable cause eliminated any issue regarding the "objective legal reasonableness of the litigation.").

**Request for Production No. 53**

Defendants state that, "[a]s previously represented by counsel and confirmed by the same testimony cited in plaintiff's brief, no non-privileged documents are responsive to the first request." [Def. Let 7/29/14 at 2, 7]. Defendants will provide a

formal written response to Request for Production No. 53, in compliance with Fed. R. Civ. P. 26(g). Defendants will provide a privilege log of documents responsive to this request. Fed. R. Civ. P. 26(b)(5), D. Conn. L. Civ. P. 26(e) (privilege log).

**Requests for Production Nos. 54 and 55**

The Court has considered Requests for Production Nos. 54 and 55, and if limited to Lima policies,[1] finds they are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26 (b)(1).

The next issue presented is the parties' disagreement over whether defendants should produce "rescission related materials" for policies in which Lima does <u>not</u> hold an interest.

Lima contends that its allegations that "defendants have induced policy holders to make premium payments while expecting and intending to seek the rescission of their policies <u>are not</u>

---

[1] As of July 25, 2013, Lima holds the interest in 181 Phoenix policies currently in force (the "In Force Policies"). These policies were issued between 2003 and 2008 and total $1.08 billion dollars in face amount. Phoenix has collected approximately $169 million in premiums on the In Force Policies, and Lima continues to pay Phoenix approximately $2.6 million each month in premiums on these policies. As of July 25, 2013, Lima has lapsed or surrendered (i.e. sold to Phoenix) a total of 66 policies and received $0 in return for those policies (the "Lapsed Policies"). The Lapsed Policies had a total face amount of $303.5 million. Phoenix received a total of $24.1 million in premiums on the Lapsed Policies before they were lapsed. [Amend. Compl. ¶36].

5

limited just to policies in which Lima holds interests." [Pl. Let. 9/16/14 at 5 (emphasis added)]. Because Lima alleges that "(i) Phoenix and its executives made a conscious decision to relax Phoenix's underwriting standards in order to bring in more business, particularly high face-amount policies that defendants knew were destined for the secondary market, but then (ii) attempted to rescind the same policies, as purportedly being 'STOLI' policies, once Phoenix became unable to meet the substantial liabilities owed on those policies." Id. at 6, citing Amend. Compl. ¶¶82-83, 86, 148. Accordingly, plaintiff contends that, "[i]f the factual record demonstrates . . . that Phoenix intentionally relaxed its underwriting standards and actively solicited and embraced policies with similar characteristics to those it now seeks to rescind as STOLI, then Phoenix's rescission efforts will be shown to be pretextual and in bad faith." [Pl. Let. 9/16/14 at 6]. Lima seeks information on "when Phoenix purportedly 'learned' that certain policies were STOLI policies, when Phoenix decided to actually pursue rescission of those same policies, and when these events occurred in relation to Phoenix's representations to regulators (and others) about its involvement in STOLI business." [Pl. Let. 9/16/14 at 7 (emphasis added)]. Plaintiff also argues that its "CUTPA claims relate to defendants' general business practices, not just to their treatment of Lima's policies." Id. at 5.

6

The Court finds that plaintiff's requests for documents concerning policies in which Lima does not hold an interest is too broad on this record.  This ruling is without prejudice to plaintiff refiling amended requests <u>after</u> defendants have produced the discovery related to Lima policies and on a showing that some further but limited targeted discovery is warranted. Lima has not provided any authority to the Court to support the proposition that CUTPA discovery into "general business practices" is broader in scope than Rule 26(b)(1).

Accordingly, defendants will provide responses to Lima's First Requests for Production 53, 54, and 55 in accordance with this ruling and order.

**Scheduling Order**

Discovery is set to close on May 15, 2015, and dispositive motions are due by July 15, 2015. [Doc. #126].

The parties will contact the Court if any issues arise that may delay the progress of this case, before these deadlines expire.

**October 28, 2014, Conference**

The next case management/discovery conference will be held on October 28, 2014 at 11:00 AM. The parties will provide a joint agenda by the close of business October 24, 2014. The agenda may be submitted to the law clerk at: Alyssa_Esposito@ctd.uscourts.gov

This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport this 6th day of October 2014.


  ___/s/_____
  HOLLY B. FITZSIMMONS
  UNITED STATES MAGISTRATE JUDGE