```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


                                    :
LIMA LS PLC                         :
                                    :
v.                                  : CIV. NO. 3:12CV1122(WWE)
                                    :
PHL VARIABLE INSURANCE              :
COMPANY, ET AL                      :
                                    :
                                    :
```

**RULING ON PLAINTIFF'S MOTION TO COMPEL [Doc. #181]**

Plaintiff seeks to compel responses to First Set of Interrogatories 3 and 4 and Third Request for the Production of Documents.  Phoenix stands by its responses to these interrogatories.

1. **First Set of Interrogatories Nos. 3 & 4**

Lima's First Set of Interrogatories Nos. 3 and 4, seek the following.

**Interrogatory No. 3:**

> Identify every PAUL [Phoenix Accumulator Universal Life] policy that Phoenix has identified as an actual or potential STOLI policy and, with respect to each such policy, provide: (a) the policy number, face amount, issue date, and age of insured at issuance; (b) the underwriter(s) who reviewed and/or approved the policy for issuance; (c) the date on which Phoenix determined the policy was an actual or potential STOLI policy; and (d) all actions taken with respect to the policy once such determination was made.

1

> **Defendants' Objection:** Defendants incorporate the General Objections as [] set forth in full herein. Defendants object to this Interrogatory as seeking information protected by the attorney-client privilege, work product doctrine or both. Defendants further object to this Interrogatory as overly broad and unduly burdensome, including because it is unlimited in scope and/or time frame. Defendants further object that this Interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object that the phrase "actual or potential STOLI policy" is vague and ambiguous.

Defendant contends that plaintiff's premise that the LPT [Life Policy Transfer] spreadsheet is a secret list of STOLI policies is a false premise. "Phoenix simply did not maintain a list of policies for potential rescission." [Doc. #191 at 1].

Phoenix states that it "did review policies from time to time and brought lawsuits when evidence showed that policies violated the law; information regarding those policies is public record." Id. However, "to the extent that Lima seeks information about policies counsel reviewed and yet opted to not file suit, such information is clearly protected by the attorney-client privilege and work product doctrine." Id. The Court agrees.

Lima responds that it "seeks only objective factual information, such as policy numbers, dates and names," . . . "the underlying facts as to these policies" which are not "'immunized from discovery merely because they were gathered for use in a pending or anticipated lawsuit.'" [Doc. #200 (emphasis

2

in original) (quoting <u>Primetime 24 Joint Venture v. Echostar Communications Corp.</u>, No. 98CIv. 6738, 2000 WL 97680, at *2 (S.D.N.Y. Jan. 28, 2000))]. Phoenix argues that "Interrogatory No. 3 does not seek only 'objective factual information;'" rather, disclosure of "the characteristics of policies that counsel reviewed, and whether Phoenix filed suit, would reveal how Phoenix's attorneys analyze insurable interest laws in various jurisdictions." [Doc. #191 at 11-12 (citing <u>U.S. v. Adlman</u>, 134 F.3d 1194, 1202 (2d Cir. 1998) (applying work product doctrine to an attorney's mental impressions with respect to transactions that were actually ultimately litigated, and to documents that "can fairly be said to have been prepared or obtained because of the prospect of litigation."))]. Phoenix contends that Interrogatory 3 impermissibly seeks privileged information to the extent it seeks a list of policies "that Phoenix's Legal Department or outside counsel <u>reviewed</u>, even where it did not ultimately file a lawsuit that 'alleged' or 'claimed' STOLI." [Doc. #191 at 9 (emphasis in original)]. Lima's definition of the term "STOLI," defendant argues, implicates a legal review and on that basis the request to compel a response must be denied.[1]  Defendant's internal

---

[1] Lima defined the term "STOLI" in its First Set of Interrogatories as follows,

> "STOLI" or "IOLI" policies shall mean and refer to any alleged or actual "stranger-originated" or

3

assessments of whether a policy violates "the law of any state" is privileged. Counsel are encouraged to discuss this further. It is unclear whether a document exists that was prepared in the ordinary course of business that may contain the information sought in Interrogatory No. 3, without triggering a privilege claim.  Lima has not asked this question although it states, "Interrogatory No. 3 specifically asks for policies of those types that 'Phoenix has identified,' meaning that someone at Phoenix has identified them in some manner as actual or potential 'STOLI' policies, such as by placing them on a list of potential 'STOLI' policies or sending them for what Phoenix calls a 'Quality Review.'" [Doc. #200 at 8 (emphasis in original)]. There may be an interrogatory that will provide Lima with the information it seeks without violating the attorney-client privilege or work product doctrine, however, in its current form, the Court will not compel a response to Interrogatory No. 3.

Phoenix further objects that the phrase "actual or potential STOLI policy" is vague and ambiguous.  Defendant

---

    "investor-originated" life insurance policies; life insurance policies that were actually or allegedly originated without an insurable interest at the time of the issuance; or policies that are otherwise claimed to be, or actually defined as, "STOLI" or "IOLI" under the law of any state.

    [Doc. #191 at 8-9].

4

states it has already identified the policies Phoenix has challenged in Court in its response to Interrogatory No. 1 and Phoenix has offered to provide a list of its rescission actions. [Doc. #191 at 9].

To the extent that Lima seeks information regarding non-Lima policies, the request is denied. This ruling is without prejudice to plaintiff refiling an amended interrogatory <u>after</u> defendants have produced the discovery related to Lima policies and on a showing that some further but limited targeted discovery is warranted.

Plaintiff's motion to compel a response to Interrogatory No. 3 is **DENIED** on this record.

**<u>Interrogatory No. 4</u>:**

> With respect to the LPT Spreadsheet, identify: (a) the meaning of "LPT"; (b) who was involved in the creation of the LPT Spreadsheet, when it was created, and the reasons why it was created; (c) the criteria for placing, updating or removing a policy on the LPT Spreadsheet; and (d) all persons involved in maintaining, reviewing or using the LPT Spreadsheet."
>
> **Defendants' Objection**: Defendants incorporate the General Objections as [] set forth in full herein. Defendants object that discovery regarding the LPT Spreadsheet is neither relevant nor reasonably calculated to lead to discovery of admissible evidence. Defendants also object that the phrase "the meaning of LPT" is vague and ambiguous. Defendants further object that the request for the identity of "all persons involved in maintaining, reviewing or using the LPT Spreadsheet" is overly broad to the extent it seeks identification of administrative

5

employees who had no substantive involvement with the document.

**Defendants' Second Supplemental Objections and Response**: Subject to and without waiving these objections, Defendants respond as follows: "LPT" refers to the file-name initially given to the spreadsheet. To the best knowledge available, "LPT" stands for "life policy transfer." The spreadsheet was created during the first quarter of 2008. Neal Regels and Diane Nemphos were involved in its creation. The spreadsheet was created to log policy ownership changes. Non-familial ownership transactions involving policies with $1 million or more face amount and insured age 70 or up were logged into the spreadsheet by Owen McCabe, Heather Sammon, Colleen Kirsch, and Karen White. At times, other administrative employees and other personnel populated data in the spreadsheet, including Susan McDonald, Laura Carbonne, Jessica Henesy and Christine Bush, Diane Nemphos, Gina O'Connell, Neal Regels, Tom McCabe, and Richard Elomaa used the spreadsheet.

Phoenix stated it has "responded in full to Interrogatory 4, providing all information requested about the "LPT Spreadsheet," including the reason it was created-to track ownership transfers." Defendant maintains that this interrogatory was properly verified and the response is complete and accurate. [Doc. #187 at 1, 7].

Lima insists that the response is not complete because "Phoenix needs to explain the reasons why it was interested in tracking changes in policy ownership as to the policies included on the LPT Spreadsheet." [Doc. #181 at 19-21 (emphasis added)]. Phoenix states it has explained "why" in its response: "The spreadsheet was created to log policy ownership changes. Non-familial ownership transactions involving policies with a $1

6

million or more face amount and insured age 70 or up were logged into the spreadsheet . . . ." [Doc. 191 at 14 (quoting Defendants' Second Supplemental Objections and Response]. Although Lima insists that defendant's sworn response to Interrogatory No. 4 is not responsive, Phoenix states that the response is "complete, identifies the information called for and was verified by a duly authorized Phoenix representative and "[d]espite the wild conjecture on Lima's part, the LPT Spreadsheet is unequivocally not a litigation planning tool." [Doc. #191 at 14 (emphasis in original)]. Finally, Phoenix correctly points out that it has "no obligation to disprove Lima's conjectures by supplementing an already complete response." [Doc. #191 at 15].

Accordingly, plaintiff's Motion to Compel a supplemental response to Interrogatory No. 4 is **DENIED**.

2. **Third Requests for Production**

Plaintiff also served an accompanying Third Request for Production of Documents, seeking all documents "referenced in, used in preparing or otherwise relating to the subject matter of" Phoenix's responses to the interrogatories.

Defendant states that this issue is moot. Phoenix indicated at the December 2, 2014 status conference that it would amend its responses to Lima's Third Request for Production. [Doc. #191 at 15].

7

Accordingly, plaintiff's Motion to Compel a response to the Third Requests for Production is DENIED without prejudice.

**Scheduling Order**

Discovery is set to close on May 15, 2015, and dispositive motions are due by July 15, 2015. [Doc. #126].

The parties will contact the Court if any issues arise that may delay the progress of this case, before these deadlines expire.

**March 16, 2015, Conference**

The next case management/discovery conference will be held on March 16, 2015 at 11:00 AM. The parties will provide a joint agenda five days before the conference. The agenda may be submitted to the law clerk at: Alyssa_Esposito@ctd.uscourts.gov

**CONCLUSION**

For the reasons stated, plaintiff's Motion to Compel **[Doc. #181]** is **DENIED** and/or **DENIED as moot.**

This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. §636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the

8

district judge upon motion timely made.

    ENTERED at Bridgeport this 16th day of March 2015.


                                      ____/s/_____
                                      HOLLY B. FITZSIMMONS
                                      UNITED STATES MAGISTRATE JUDGE