UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LIMA LS PLC,<br><br>    Plaintiff,<br><br>v.<br><br>PHL VARIABLE INSURANCE COMPANY, a Connecticut corporation; PHOENIX LIFE INSURANCE COMPANY, a New York corporation; THE PHOENIX COMPANIES, INC., a Connecticut corporation; JAMES D. WEHR, an individual; PHILIP K. POLKINGHORN, an individual; and DONA D. YOUNG, an individual,<br><br>    Defendants. | No. 3:12-cv-01122 (WWE) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 5, 2016 RULING**

Martin Flumenbaum
Allan J. Arffa
Jessica S. Carey
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000

- and -

James I. Glasser (ct07221)
Kevin M. Smith (ct24774)
**Wiggin and Dana LLP**
One Century Tower
265 Church Street, P. O. Box 1832
New Haven, CT 06508-1822
Tel: (203) 498-4313

*Counsel for Plaintiff Lima LS plc*

**ORAL ARGUMENT REQUESTED**

**PRELIMINARY STATEMENT**

Reconsideration of the Ruling[1] is appropriate because the Court overlooked critical facts and law demonstrating that Lima is entitled to the discovery it seeks from Milliman. The Court should reconsider and reverse its Ruling quashing Lima's Subpoena to Milliman.

Phoenix (and Nassau, which joined in Phoenix's opposition) cannot seriously dispute that the Subpoena calls for relevant information, such as Milliman's analyses of groups of policies that ***include*** policies in the Lima Portfolio (including Phoenix's so-called ▮▮▮▮▮▮▮▮ policies). Such analyses support Lima's allegations that Phoenix assessed and tracked investor-owned policies, and determined both the value of and its potential liability for such policies, thereby furnishing the motive for (and furthering) the anticompetitive and fraudulent scheme Lima alleges.

Nor can Phoenix seriously contend that all such analyses are protected work product. Lima has identified responsive documents that Milliman created in the ordinary course of business, unconnected to anticipated or pending litigation, and further details about those analyses would also not be work product. These responsive documents were included with Lima's submissions prior to the Ruling, but apparently were overlooked.

Phoenix argues that the Court properly quashed the Subpoena on work product grounds because the Court upheld ***Phoenix's*** work product assertions as to 32 of ***its*** documents based on (i) the Court's *in camera* review, (ii) the affidavit of Gina O'Connell, and (iii) the declaration of Kostas Cheliotis. But the documents reviewed *in*

---

[1] Capitalized terms not defined in this reply brief have the meanings specified in Lima's opening brief (Dkt. No. 365).

*camera* came from ***Phoenix's*** files, and relate to a discrete valuation specific to the Lima Portfolio that was conducted last year, during the pendency of this litigation. The Subpoena, on the other hand, seeks **all** of ***Milliman's*** documents concerning the Lima Portfolio. In particular, Ms. O'Connell's affidavit and Mr. Cheliotis's declaration—in addition to being self-serving and conclusory—do not describe Milliman's broader analyses of ***groups*** of policies that include policies in the Lima Portfolio, and Phoenix has advanced no plausible argument for excluding such relevant analyses from discovery.

Finally, at minimum, Lima should be entitled to test Ms. O'Connell's and Mr. Cheliotis's affirmative statements—and omissions—at depositions or in a hearing.

At bottom, Lima has amply demonstrated that the Subpoena seeks relevant, discoverable documents from Milliman that are not subject to any privilege or protection. Lima respectfully submits the Court should reconsider and reverse its Ruling.

## ARGUMENT[2]

### I.

### THE SUBPOENA SHOULD NOT HAVE BEEN QUASHED BECAUSE IT CALLS FOR RELEVANT, DISCOVERABLE DOCUMENTS

The Court's Ruling quashed the Subpoena based primarily upon its finding that 32 documents Phoenix submitted ***from its own files*** for *in camera* review were protected work product. Respectfully, we believe the Court erred in that regard.

But, in any event, that finding does not mean the Subpoena should be quashed. Lima's opening brief—and its original submission filed in advance of the

---

[2] As a threshold matter, the Court should reject Phoenix's boilerplate argument that Lima "does not apply, let alone meet, the proper standard for reconsideration." (Opp. at 4.) As Phoenix concedes (and as the Court confirmed during the parties' September 16, 2016 discovery conference), reconsideration is appropriate to correct a "clear error" or prevent "manifest injustice" (*id.* at 3), and Lima clearly seeks reconsideration of the Ruling on this basis (Br. at 12-13, 17).

Ruling—established that Milliman conducted a variety of non-privileged analyses and projects for Phoenix and Nassau over time. (Br. at 7-9; Dkt. No. 315 at 17-18 (describing documents and stating that "Phoenix has made no showing of work product protection as to such analyses").) Surely the Court has not yet reviewed and ruled as to whether all of the responsive information contained in Milliman's own files is in fact protected work product. The Ruling erred by overlooking this critical distinction.

Putting aside the fact that the Court cannot possibly know whether ***all*** of Milliman's documents as to "Lima only" analyses are privileged, the fact is that there clearly also exists analyses and projects that include Lima policies; and even Phoenix has not claimed those materials are subject to any protection or privilege.[3] Instead, Phoenix offers three anemic justifications for quashing the Subpoena:

*First*, Phoenix challenges the relevance of "analyses of larger cross-sections of Phoenix's in-force block that happen to include policies within the Lima Portfolio." (Opp. at 9.) But "at the discovery phase, the definition of relevance is broad." *290 Pratt Street, LLC* v. *Gen. Motors Corp.*, No. 3:05-CV-489 (WWE), 2007 WL 1203582, at *2 (D. Conn. Apr. 18, 2007). Here, it is plainly relevant that Phoenix and Nassau had Milliman analyze Phoenix's outstanding ███████████
███████████████████████████████████████████████████████[4]

---

[3] While Phoenix claims it has filed "sworn affidavits" showing that "Milliman's work ***specific to the Lima Portfolio*** was only done for work product purposes" (Opp. at 9 (emphasis added)), those materials do not address Milliman's ***other*** analyses that ***include*** policies in the Lima Portfolio, which are not protected. In addition, as explained below, Lima believes that Phoenix's proffered affidavits are insufficient to confer work product protection on Milliman's specific analyses of the Lima Portfolio.

[4] Phoenix's response to a highly relevant document, cited in Lima's opening brief and prior submissions, where Milliman ███████████
███████████████████████████████ is to argue that the document was "inadvertent[ly]" produced. (Opp. at 9 n.2.) Thus, Phoenix appears to concede the relevance of this area of Milliman's work, and its belated claim of "inadvertent" production only underscores how Phoenix and Nassau have abused claims of work product protection to conceal other, highly relevant materials concerning such analyses.

██████████████████████████████████████████████████

██████ (Br. at 7-9.)

Indeed, Milliman's efforts to ████████████████████████████

████████████████████████████████ goes to the heart of the anticompetitive and fraudulent scheme Lima alleges, particularly since Lima holds a substantial percentage of Phoenix's ████████ business. (*See* Br. at 20-21.) For example, Milliman's conclusion that ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ (Kubota Decl. Ex. E at -674) confirms Phoenix's motive for improperly seeking to reduce or eliminate its liabilities on such policies, and further documents on this issue are thus highly relevant.

Moreover, beyond the ████████ business generally, Milliman's targeted analyses of discrete groups of policies with specific characteristics—such as the so-called ████████████████ policies described above, which again ***included*** policies in the Lima Portfolio—are also directly relevant here. In its original submission, Lima included documents confirming that Milliman engaged in such relevant and non-protected analyses (Dkt. No. 315 at 17-18), but the Ruling apparently did not consider these documents.

*Second*, Phoenix similarly asserts that the Subpoena's request for documents "concerning the Lima Portfolio" is necessarily limited to documents that

---

[5] Phoenix's citation to a statement by Lima's counsel that certain "block-wide" actuarial appraisals performed by Milliman "do not meaningfully answer [Lima's] questions related to valuation issues" (Opp. at 9) is highly misleading. In making the statement, Lima's counsel noted that, because the appraisals themselves are only a "small fraction of the information that is likely available," any underlying spreadsheets, models or other related work papers—which are among the documents Lima seeks through the Subpoena—should also be produced. (Dkt. No. 320-1 at 1.)

*solely* concern the Lima Portfolio, and does not seek analyses that *include* policies in the Lima Portfolio (among others). We have already addressed Phoenix's strained interpretation at length (Dkt. No. 323 (June 2, 2016 Conf. Tr.) at 42:17-49:10; Dkt. No. 353 (July 28, 2016 Conf. Tr.) at 68:19-86:4), and it should be rejected for the same reasons here. Phoenix's claim that all documents responsive to the Subpoena are protected work product is overly broad and not supported, and contorts the Subpoena's request by suggesting that non-work product documents are outside its scope.

*Third*, Phoenix baldly asserts that Milliman need not identify and produce documents responsive to the Subpoena in light of the proportionality prong of Rule 26. Phoenix, however, cites no authority (under Rule 26 or otherwise) where privilege or work product claims as to *some* documents supposedly justified the categorical denial of discovery. By contrast, Lima's opening brief and original submission cited a number of decisions confirming that the proper approach in such situations is for the Court to order production of the non-privileged documents, together with a privilege log. (Br. at 19-20; Dkt. No. 315 at 9-10.)[6] The Ruling clearly erred in deviating from these authorities. Indeed, Phoenix never bothers to address them. Nor could it, since nothing about the recent proportionality amendments to Rule 26 changed this well-established rule.

In sum, Phoenix and Nassau have failed to show the requisite "good cause" for quashing the Subpoena, since they failed to present evidence demonstrating that the entire universe of Milliman's responsive documents is necessarily work product.

---

[6] *See, e.g.*, *Silano* v. *Wheeler*, No. 13-CV-185 (JCH), 2013 WL 6511948 (D. Conn. Dec. 12, 2013) (Fitzsimmons, M.J.) (ordering production of responsive, non-privileged documents and privilege log); *Kingsway Fin. Servs., Inc.* v. *Pricewaterhouse-Coopers LLP*, No. 03-CV-5560 (RMB) (HBP), 2008 WL 4452134, at *10–12 (S.D.N.Y. Oct. 2, 2008) (denying motion to quash subpoena and ordering creation of privilege log, since "[i]t is impossible at this time . . . to assess the applicability of [privilege or work product protection] on the basis of the sweeping statement by [the movant] that 'the subpoena requires privileged . . . matter and no exception or waiver applies'").

## II.

## **WORK PRODUCT PROTECTION DOES NOT APPLY**

Phoenix's and Nassau's work product assertions also fail on the merits, as explained in Lima's original submission and opening brief and discussed below, and the Ruling further erred in reaching a contrary determination.

**A.     Milliman's Analyses for Nassau Are Not Protected Work Product**

Lima's opening brief explained that documents created by or for Nassau— a non-party—cannot be work product under Rule 26(b)(3)(A), which only confers protection on documents prepared "by or for [a] *party* or its representative." (Br. at 21.) Tellingly, Phoenix barely discusses this critical point, instead asserting that "Lima's proposed 'party' requirement would preempt work-product assertions from every parent company, including Fortress in this case, when its subsidiary is the named party in a lawsuit." (Opp. at 12.) But Rule 26 is clear on its face, and Lima cited a number of authorities confirming that "party" means what it says. (Br. at 21.) Further, Lima is primarily challenging documents that were created ***prior to*** the merger between Phoenix and Nassau, when there was no legal relationship between the two.

For this reason, *Fitzpatrick* v. *Am. Int'l Grp., Inc.*, No. 10 Civ. 142 (MHD), 2011 WL 335672 (S.D.N.Y. Jan. 28, 2011), a decision cited in the Ruling, simply does not apply. In *Fitzpatrick*, the work product at issue was created by an accounting firm retained by counsel for the defendant, *id.* at *1-3, and thus qualified as material prepared for a party or its representative. Here, it is undisputed that Nassau is not (and has never been) a party to any relevant litigation, and Milliman's analysis for Nassau cannot be protected.

Moreover, Phoenix never persuasively addresses Lima's argument that Nassau's "***sole interest*** in seeking any allegedly 'settlement-related' analyses from Milliman was to determine the financial implications of pending lawsuits involving Phoenix," which is a "quintessentially 'commercial' issue that is not protected." (Br. at 22.) Phoenix merely states in boilerplate fashion, with no explanation, that "[f]or-profit entities can certainly engage in business transactions and yet protect their work product." (Opp. at 12.) But, on the record here, it is clear that Nassau prepared any allegedly "settlement-related" materials for business reasons, and as such they are not protected. *United States* v. *Adlman*, 134 F. 3d 1194, 1202 (2d Cir. 1998). The same is true as to any other documents prepared in the ordinary course of Nassau's business, unrelated to any potential settlement (*see* Br. at 21-22), which Phoenix does not address at all.

**B.     Many of Milliman's Analyses for Phoenix Do Not Involve Litigation**

Further, substantial portions of Milliman's analyses for Phoenix appear to have been conducted outside the context of any pending or anticipated litigation (or settlement), and these ordinary-course business materials are simply not protected. (Br. at 25-26.) Phoenix offers no rejoinder whatever to this argument.

As to Milliman's analysis specific to the Lima Portfolio, the affidavit from Gina O'Connell utterly fails to establish that Milliman acted as a ████████ as Ms. O'Connell contends. Lima has identified absolutely no record support for her assertion, such as an engagement letter explaining Milliman's role in those terms. (*See* Br. at 23-24, 26-27.) The absence of any documentary evidence itself suggests that the Ruling should be reconsidered, and that Ms. O'Connell, like Mr. Cheliotis, should be subject to examination at a deposition and/or a hearing, as further discussed below. *Infra* at 9-10. Moreover, like Mr. Cheliotis's declaration, Ms. O'Connell's affidavit is silent on

7

Milliman's broader analyses of groups of policies that *include* policies held by Lima. (Br. at 10, 20.) Thus, in all events, Ms. O'Connell's statements about Milliman's analyses specific to the Lima Portfolio do not justify the Ruling's blanket denial of all discovery from Milliman.

C.  **Phoenix and Nassau Did Not Share a "Common Interest" as to Milliman's Analyses**

Phoenix also fails meaningfully to engage with Lima's argument that, prior to the execution of their merger agreement in September 2015, Phoenix and Nassau did not share any "common interest" that might justify the withholding of documents exchanged between them. (Br. at 27-32.) Instead, Phoenix simply cites its arguments from a brief filed by Nassau (*see* No. 3:16-mc-00111-WWE, Dkt. No. 65 at 13-17), without bothering to tailor them to the issues relevant here.

In all events, the "common interest" doctrine also requires that a document be subject to an underlying privilege or protection, *before* reaching the issue of whether sharing the document waived privilege (or did not due to the "common interest" doctrine). Here, the potentially privileged nature of Milliman's documents responsive to the Subpoena could not have been addressed in the Ruling because Milliman has not yet identified the full extent of its responsive materials. Thus, the Ruling was in error when it found a broad "common interest," and upheld Phoenix's work product claims on a limited record consisting of 33 documents from Phoenix's files. Again, the proper remedy is for Milliman to identify and produce the documents responsive to the Subpoena, with any allegedly privileged or protected materials withheld and identified on a log. *See supra* at 5. At that point, any privilege or work product claims, and further questions of "common interest," can be resolved with reference to specific documents.

**D.      Any Ambiguities in the Record Should Be Resolved by a Deposition or Hearing**

Finally, any ambiguity about whether work product protection applies to Milliman's analyses for Nassau and Phoenix should be resolved through deposition testimony or a hearing, and not through Mr. Cheliotis's and Ms. O'Connell's self-serving declaration and affidavit. (Br. at 24-25, 27.) Here, Phoenix claims that when faced with two possible and competing views of the evidence, the Court is permitted to choose one competing view of the evidence, citing *Lyondell-Citgo Refining, LP* v. *Petroleos de Venezuela, S.A.*, No. 02 Civ. 0795 CBM, 2004 WL 3019767, at *2 (S.D.N.Y. Dec. 29, 2004). In *Lyondell*, however, the Court held that the Magistrate Judge did not clearly err in finding certain documents were not privileged because the defendant "did not carry its burden of establishing that the documents were . . . privileged." 2004 WL 3019767 at *2.

*Lyondell* thus confirms that the key inquiry is whether the party claiming privilege or work product protection has discharged its burden of proving "by specific and competent evidence" every element of the asserted privilege or protection. *See QBE Ins. Corp.* v. *Interstate Fire & Safety Equip. Co., Inc.*, No. 07-CV-1883 (SRU), 2011 WL 692982, at *3 (D. Conn. Feb. 18, 2011). In applying this burden of proof, there is no contradiction with the equally applicable rule that any ambiguities are construed against the party asserting privilege. *See, e.g.*, *Bernstein* v. *Mafcote, Inc.*, 43 F. Supp. 3d 109, 116 (D. Conn. 2014). Here, Phoenix has utterly failed to carry its burden: as to the 33 documents submitted for *in camera* review, its evidence of work product protection was wholly conclusory and self-serving, and as to documents responsive to the Subpoena, Phoenix submitted no evidence at all.

In resisting Lima's suggestion for a deposition or hearing to resolve disputed factual issues, Phoenix seeks to distinguish *Wellnx Life Scis. Inc.* v. *Iovate Health Scis. Research Inc.*, No. 06-CV-7785 (PKC), 2007 WL 1573913 (S.D.N.Y. May 24, 2007), which permitted a deposition of a witness and a hearing with live witnesses to make credibility findings as to an asserted waiver of privilege. Phoenix asserts that, unlike in that case, there is "no ambiguity" in Mr. Cheliotis's declaration or Ms. O'Connell's affidavit that "require[s] further follow-up." (Opp. at 11.) But the documentary evidence contradicts these witnesses' broad, conclusory statements about work product protection. As Lima established (Br. at 21-22, 25-26, 30), the record is clear that (1) Milliman performed analyses for Phoenix and Nassau in the ordinary course of their business; and (2) Nassau did not perceive a common interest with Phoenix prior to executing their merger agreement. In addition, Mr. Cheliotis's and Ms. O'Connell's written statements say nothing about Milliman's analyses of larger groups of policies that *include* policies held by Lima. (Br. at 10-11, 20.)

These contradictions and selective omissions on key factual issues are ambiguities that should be explored in depositions and/or a hearing. *See, e.g.*, *In re Velo Holdings Inc.*, 473 B.R. 509, 513 (Bankr. S.D.N.Y. 2012) (parties permitted to take "limited deposition discovery" to address "disputed factual issues" concerning party's assertion of privilege and common interest); *Novella* v. *Westchester Cnty.*, No. 02 Civ. 2192 WBM, 2004 WL 3035405, at *7 (S.D.N.Y. Dec. 29, 2004) (ordering hearing where it was "unclear whether defendants possess[ed] documents more responsive to the . . . document request" at issue). In these circumstances, the Court should permit Lima to question Mr. Cheliotis and Ms. O'Connell under oath.

## CONCLUSION

For the reasons above, Lima respectfully requests that the Court reconsider and reverse the Ruling and direct Phoenix to produce the 33 withheld documents related to Lima's Request No. 6, or in the alternative, modify the Ruling as set forth in Lima's opening brief.

Dated: September 23, 2016

Respectfully submitted,

PLAINTIFF
LIMA LS PLC

/s/ Allan J. Arffa
Martin Flumenbaum*
Allan J. Arffa*
Jessica S. Carey*
**Paul, Weiss, Rifkind,**
**Wharton & Garrison LLP**
1285 Avenue of the Americas
New York, New York 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990
E-mail: mflumenbaum@paulweiss.com
aarffa@paulweiss.com
jcarey@paulweiss.com

James I. Glasser (ct07221)
Kevin M. Smith (ct24774)
**Wiggin and Dana LLP**
One Century Tower
265 Church Street, P.O. Box 1832
New Haven, CT 06508-1832
Tel: (203) 498-4313
Fax: (203) 782-2889
E-mail: jglasser@wiggin.com
ksmith@wiggin.com

* admitted *pro hac vice*

# CERTIFICATE OF SERVICE

I hereby certify that, on September 23, 2016, a copy of the foregoing **PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 5, 2016 RULING** was filed electronically and served by e-mail, and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Evan A. Kubota
Evan A. Kubota
**Paul, Weiss, Rifkind,**
**Wharton & Garrison LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
E-mail: ekubota@paulweiss.com